UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| | |
|---|---|
| WINSTON GREY BRAKEALL,<br><br>Plaintiff,<br><br>vs.<br><br>DERRICK BIEBER, Unit Manager at SDSP, in his individual capacity; RYAN VANDERAA, SDDOC Employee at SDSP, JPA, and/or Unit C, in his individual capacity; WILLIAM ALLEN, Correctional Officer with the Rank of Corporal at SDSP, in his individual capacity; LT. KURTIS BROWN, SDDOC Employee at SDSP, JPA, and/or Unit C, in his individual capacity; MAJOR STEVE BAKER, SDDOC employee employed at SDSP, JPA, and/or Unit C, in his individual capacity; and LT. CHAD ROTERT, SDDOC employee employed at SDSP, JPA, and/or Unit C, in his individual capacity,<br><br>Defendants. | 4:16-CV-04057-KES<br><br><br>ORDER DENYING PLAINTIFF'S MOTION FOR RECONSIDERATION AND GRANTING DEFENDANTS' THIRD MOTION FOR SUMMARY JUDGMENT |

Plaintiff, Winston Grey Brakeall, filed a pro se civil rights lawsuit under

42 U.S.C. § 1983. Docket 1. This court granted Brakeall's motion to amend to

add the new defendants Ryan VanDeraa, Lieutenant Kurtis Brown,[1] Major

Steve Baker, and Lt. Chad Rotert (collectively referred to in this order as

_____

[1] Brakeall originally added the defendant "Lt. R. Brown" and defendants notified this court that his actual name is Kurtis Brown. Docket 216 ¶ 73. The court will refer to this defendant as Lt. Kurtis Brown.

"defendants"). Docket 141 at 2. Pending before this court are Brakeall's motion for reconsideration (Docket 265) and defendants' third motion for summary judgment (Docket 210).

## I.   Motion for Reconsideration

Brakeall moves this court to reconsider its previous denial of his motion for reconsideration (Docket 262). Docket 265. This court denied Brakeall's motion for reconsideration (Docket 262) because he had "not shown with clear and convincing evidence that defendants engaged in fraud or misrepresentation" and he was not prevented from litigating his claim. Docket 262 at 3-4.

In his most recent motion, Brakeall again argues that previous defendants Kaemingk, Dooley, Young, Meirose, and remaining defendants Bieber and Allen used false statements to conclude that there was no mandatory overtime. Docket 265 at 1. Brakeall claims that the requested documents (regarding the use of overtime and staffing) "would have shown the impact of both the lack of officers and the overwork required to maintain minimal functionality in the prisons, were withheld, either through a claim of non-existence or claimed security risk if the requested material were provided to an inmate." *Id.* at 2. He asks that "he be allowed limited discovery specifically related to the use of overtime and staffing" and has filed a supplement with the questions he seeks to ask. *Id.*; *see* Docket 266.

Rule 60(b) authorizes a court to relieve a party from a final judgment under the following circumstances:

> (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly
> discovered evidence that, with a reasonable diligence, could not
> have been discovered in time to move for a new trial under Rule
> 59(b); (3) fraud (whether previously called intrinsic or extrinsic),
> misrepresentation, or misconduct by an opposing party; (4) the
> judgment is void; (5) the judgment has been satisfied, released, or
> discharged; it is based on an earlier judgment that has been
> reversed or vacated; or applying it prospectively is no longer
> equitable; or (6) any other reason that justifies relief.

Fed. R. Civ. P. 60(b). Here, Brakeall reargues why he needs more discovery

regarding overtime and staffing. Docket 265. He does not present new evidence

that was not already considered by this court in its earlier orders on summary

judgment and denial of his motion for reconsideration. Dockets 196, 262.

Brakeall's entire motion seeks to relitigate why he needs further discovery.

Docket 265.

Rule 60(b) motions cannot be used "to 'tender new legal theories' " or to

reargue " 'on the merits.' " *Arnold v. ADT Sec. Servs., Inc.*, 627 F.3d 716, 721

(8th Cir. 2010) (quoting *Hagerman v. Yukon Energy Corp.*, 839 F.2d 407, 414

(8th Cir. 1988) (first quoted material); *Broadway v. Norris*, 193 F.3d 987, 990

(8th Cir. 1999) (second quoted material)). The only potentially applicable

circumstance here is "any other reason that justifies relief." Fed. R. Civ. P.

60(b)(6). But to obtain relief under Rule 60(b)(6), a party must show that

"exceptional circumstances . . . denied the moving party a full and fair

opportunity to litigate his claim and . . . prevented the moving party from

receiving adequate redress." *Harley v. Zoesch*, 413 F.3d 866, 871 (8th Cir.

2005) (citation omitted). Because Brakeall cannot use a motion for

reconsideration to reargue his claims on the merits and has had a fair

opportunity to litigate his claims (in his opposition to summary judgment and a previous motion for reconsideration on this very issue), his motion for reconsideration (Docket 265) is denied.

## II.    Defendants' Third Motion for Summary Judgment

### A.   Factual Background[2]

Viewing the evidence in the light most favorable to Brakeall, as the non-moving party, the facts are:

Brakeall was taken into custody after a parole violation on November 4, 2014, and was transferred to East Hall at the Jameson Prison Annex (JPA) in the South Dakota State Penitentiary (SDSP). Docket 40 ¶¶ 16, 18.[3] Brakeall is a "giant, high-profile sex offender[.]" Docket 251 ¶ 37. He claims that other prisoners call him "Chomzilla" derived from "child molester" and "Godzilla" that references his physical size of being 6 feet, 9 inches tall and 330 pounds. Docket 1 ¶¶ 29, 54.

Brakeall's original complaint focuses on three assaults: December 13, 2014, February 1, 2016, and February 2, 2016. Docket 1 ¶ 23, 43, 45, 100.

---

[2] Because defendants move for summary judgment, the court recites the facts in the light most favorable to Brakeall. Where the facts are disputed, both parties' averments are included. Under Local Civil Rule 56.1(D), "All material facts set forth in the movant's statement of material facts will be deemed to be admitted unless controverted by the opposing party's response to the moving party's statement of material facts."

[3] Brakeall includes by reference his first and second statements of disputed material facts. *See* Docket 251 ¶ 100. His third statement of disputed facts does not reference the factual background about February 2016 assaults which is necessary for understanding the current issues before the court. Thus, the court has pulled facts from Brakeall's complaints when necessary.

Brakeall claims that in January 2016, two inmates told him that other prisoners planned to attack him to "make their bones." Docket 1 ¶ 37. Brakeall told Officer Bieber about the threats and Bieber said he would "look into it." *Id.* ¶ 38. On February 1, 2016, Brakeall was assaulted in the recreation room. *Id.* ¶ 41. The attack did not stop until the assailants left on their own accord. Docket 40 ¶ 47. Defendants contend that after the February 1, 2016 assault a violation report was prepared. Docket 216 ¶ 42. The assailants were sanctioned with a fine and sentenced to serve sixty days in a disciplinary unit (where they remained until June 13, 2017). *Id.* Additionally, a separation order was issued between the assailants and Brakeall ("meaning the inmates will no longer be housed at the same prison facility as Brakeall"). *Id.* At the time of the assault, neither of the assailants were identified as being gang members. *Id.* ¶ 91. Defendants claim that "it is highly unlikely that the assault on Brakeall in February 2016 was gang related. . . . [because] it would have been highly unlikely that members of different gangs would coordinate a 'gang hit' on an inmate." *Id.* ¶ 94.[4]

After dinner on February 1, 2016, inmate George Dominguez told Brakeall that the gangs in East Hall wanted him out of East Hall and that he would be attacked if he went to recreation. Docket 40 ¶ 92. On February 2, 2016, Brakeall went to recreation. *Id.* ¶ 97. That day, there were four

---

[4] In 2017, one the of the assailants was validated as a member of the TBZ gang and in 2018 the other assailant was validated as a member of the Gangster Disciples. Docket 216 ¶¶ 92, 93.

correctional officers supervising over 200 inmates and parolees in the recreation building. *Id.* ¶ 99. Dominguez approached Brakeall. *Id.* ¶ 100. Brakeall thought Dominguez was going to deliver an additional or more specific warning from a prison gang, but instead struck Brakeall in the throat with his forearm. *Id.* The strike raised a lump on the corner of his jaw and bruised his throat. *Id.* Brakeall went to the card room, found two officers there, and told them that Dominguez had assaulted him. *Id.* ¶ 102. The officers told Brakeall to wait at the gate. *Id.* When Brakeall went to the gate, Dominguez approached and began circling Brakeall. *Id.* ¶ 103. Officers arrived at the gate, handcuffed Dominguez, and removed him from the recreation building. *Id.* ¶ 104.

### 1.   Alleged Involvement of Lt. Kurtis Brown

Defendants claim that in 2016, Brown was serving as a Lieutenant. Docket 216 ¶¶ 73-74. Brakeall claims that he spoke to Brown "several times in the December 2015-February 2016 time frame about being removed from East Hall because he was repeatedly threatened by inmates he did not know, who[] he believed to be gang affiliated." Docket 251 ¶ 74. Brown does not recall Brakeall requesting protection from gang violence and asserts that even if he had this would not give Brown notice that Brakeall was actually in danger of gang violence. Docket 216 ¶¶ 75, 76. Brakeall alleges that he reminded Brown of the 2014 assault and that after the February 1, 2016 assault, Brown saw him "covered in his own blood and sent [Brakeall] directly back to his original cell after returning from the trauma center, [Brown] apparently continued to believe there was no risk of gang violence." Docket 251 ¶ 76. Brakeall claims that Brown

6

"refus[ed] to remove the plaintiff from East [H]all before or after the vicious February 1, 2016 beating" and that he failed to investigate the assault. *Id.* ¶ 24. Brakeall claims that Brown also refused to provide him with protective custody. *Id.*

Brown wrote the disciplinary report after he viewed the video of Brakeall being assaulted on February 1, 2016 and claims that this was the extent of his involvement in the matter. Docket 216 ¶ 80. Brakeall claims that after he was assaulted on February 2, 2016, that Brown "did not believe there was reason to send the plaintiff to medical, much less to protective custody." Docket 251 ¶ 76.

### 2.   Alleged Involvement of Major Chad Rotert

Brakeall claims that Rotert had seen him and heard about him multiple times and has "seen numerous kites concerning him." *Id.* ¶ 37. Defendants contend that Rotert supervises the Special Investigations Unit (SUI) and that Rotert viewed the video of the February 1, 2016 assault on Brakeall. Docket 216 ¶¶ 36, 38. The assault lasted seventeen seconds and Rotert was asked to make a copy of the video. *Id.* ¶¶ 38, 40. This was his "only involvement in this matter prior to this lawsuit being filed." *Id.* ¶ 40. Rotert was not assigned to conduct an investigation on the matter because the assailants were "immediately identified, and the assault did not appear to rise to the level of a felony assault, there was no need for SIU to conduct an investigation." *Id.* ¶ 41. Brakeall claims that Rotert was responsible for investigating the February 1, 2016 assault and for taking a statement from him, the witnesses, and

7

assailants. Docket 251 ¶ 40. He also alleges that Rotert failed to refer the crime to the Division of Criminal Investigation (DCI). *Id.*

### 3.   Alleged Involvement of Lieutenant Ryan VanDeraa

Defendants claim that in 2016, VanDeraa was serving as a Lieutenant. Docket 216 ¶ 83. Brakeall claims that VanDeraa took him to health services after the February 1, 2016, assault and that they discussed filing charges against the assailants. Docket 251 ¶ 84. "VanDeraa also failed to follow the protective custody policy when it was objectively obvious that the plaintiff was at severe threat in the facility and he did not remove him East Hall." *Id.* ¶ 84. VanDeraa claims that his action of walking Brakeall to health services and sending an email about the assault was the extent of his involvement because the assailants had been identified. Docket 216 ¶¶ 86, 87.[5]

### 4.   Alleged Involvement of Major Steve Baker

Brakeall alleges that Baker was aware that he is a "passive, high-risk individual who was the subject of decades of harassment. Major Baker was responsible for training his staff in adherence to the law and DOC policy." Docket 251 ¶ 69. In 2016, Baker was a Major and was responsible for the Special Investigations Unit (SIU). Docket 216 ¶ 69. Baker claims that after he heard that Brakeall had been assaulted on February 1, 2016, he requested a copy of the surveillance video. *Id.* ¶ 70. Baker did not believe the assault rose to the level of

---

[5] The email stated that Brakeall was assaulted in the recreation building and "[h]ealth services was not able to stop his nose from bleeding so he was sent to the ER." Docket 216 ¶ 86.

a felony needing further investigation and that it could be handled through the prison's disciplinary committee. *Id.* ¶¶ 71, 72.

Brakeall claims that "Major Baker received a kite from a confidential informant regarding the plaintiff being a target[] . . . and left the plaintiff in the same East Hall cell for fifteen days following the assaults." Docket 251 ¶ 42. He claims that Baker did not speak to him or to any of the witnesses of the February 1st assault and that there were no photographs taken of his injuries. *Id.* ¶ 71. Brakeall claims that "to the best of [his] knowledge, nothing was done to investigate the cause of the assaults to determine the likelihood of further violence." *Id.*

## B.  Legal Standard

Summary judgment is appropriate if the movant "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party can meet this burden by presenting evidence that there is no dispute of material fact or by showing that the nonmoving party has not presented evidence to support an element of its case on which it bears the ultimate burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). To avoid summary judgment, "[t]he nonmoving party may not rest on mere allegations or denials, but must demonstrate on the record the existence of specific facts which create a genuine issue for trial." *Mosley v. City of Northwoods*, 415 F.3d 908, 910 (8th Cir. 2005) (internal quotation omitted). The underlying substantive law

identifies which facts are "material" for purposes of a motion for summary

judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

"Only disputes over facts that might affect the outcome of the suit under

the governing law will properly preclude the entry of summary judgment.

Factual disputes that are irrelevant or unnecessary will not be counted." *Id.*

"[T]he mere existence of some alleged factual dispute between the parties will

not defeat an otherwise properly supported motion for summary judgment; the

requirement is that there be no genuine issue of material fact." *Id.* at 247-48

(emphasis omitted).

Essentially, the availability of summary judgment turns on whether a

proper jury question is presented: "The inquiry performed is the threshold

inquiry of determining whether there is the need for a trial—whether, in other

words, there are any genuine factual issues that properly can be resolved . . .

in favor of either party." *Id.* at 250. Prisoners who proceed pro se are entitled to

the benefit of liberal construction at the pleading stage. *Quam v. Minnehaha

Cty. Jail*, 821 F.2d 522, 522 (8th Cir. 1987). Nonetheless, the summary

judgment standard set forth in Rule 56 of the Federal Rules of Civil Procedure

remains applicable to prisoners proceeding pro se. *Id.* The district court is not

required to "plumb the record in order to find a genuine issue of material fact."

*Barge v. Anheuser-Busch, Inc.*, 87 F.3d 256, 260 (8th Cir. 1996).

Courts must remain sensitive, however, "to the special problems faced by

prisoners attempting to proceed pro se in vindicating their constitutional

rights, and [the Eighth Circuit does] not approve summary dismissal of such

10

pro se claims without regard for these special problems." *Nickens v. White*, 622 F.2d 967, 971 (8th Cir. 1980). "[W]hen dealing with summary judgment procedures technical rigor is inappropriate where . . . uninformed prisoners are involved." *Ross v. Franzen*, 777 F.2d 1216, 1219 (7th Cir. 1985).

### C.  Legal Analysis

#### 1.  Official Capacity Claims

Brakeall sues Rotert, VanDeraa, Baker, and Brown in their individual and official capacities and claims that they are employees of the South Dakota Department of Corrections. Docket 149 at 1. The Supreme Court has stated, "a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office." *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989) (citing *Brandon v. Holt*, 469 U.S. 464, 471 (1985)). Brakeall seeks monetary damages. Docket 149 at 5-6. The Eleventh Amendment generally acts as a bar to suits against a state for money damages unless the state has waived its sovereign immunity. *Will*, 491 U.S. at 66. But when an official capacity claim is asserted for injunctive relief against a state officer, the defense of qualified immunity does not apply. *See Pearson v. Callahan,* 555 U.S. 223, 242-43 (2009). Because the state of South Dakota has not waived its sovereign immunity and because Brakeall seeks monetary damages, defendants are entitled to judgment as a matter of law on the claims against defendants in their official capacities for monetary damages.

## 2. Individual Capacity Claims

Defendants argue that they are entitled to qualified immunity and judgment as a matter of law because their actions have not amounted to constitutional violations. Docket 211 at 4. To determine whether a government official is entitled to qualified immunity the court asks: (1) whether the facts alleged, viewed in the light most favorable to plaintiff, demonstrate the official's conduct violated a constitutional right, and (2) whether the constitutional right was clearly established at the time of the alleged misconduct. *Saucier v. Katz*, 533 U.S. 194, 201 (2001). The court may address the elements in any order and if either of the elements is not met, then the official is entitled to qualified immunity. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009). The court will view the facts alleged in the light most favorable to Brakeall and determine whether he has demonstrated a genuine issue of material fact that defendants have violated a constitutional right.

### a. Prison Conditions

Defendants move for summary judgment on Brakeall's prison condition claim because this court has recently held that Brakeall failed to present facts that the alleged understaffing and overtime work had caused an increase in violence, thus there was not genuine issue as to whether the conditions of confinement were a denial of the minimal civilized measure of life's necessities.[6] Docket 196 at 20. Defendants ask that this court apply this ruling

---

[6] The court relied on an inmate-on-inmate incident report that covered January 2014 to December 2016. Docket 125-2. The inmate-on-inmate report

12

to Brakeall's prison conditions claim against Baker, Rotert, VanDeraa, and Brown. Docket 211 at 6.

Brakeall claims that although defendants' reports of violence from 2014 to 2016 are consistent, defendants have failed to produce a longer baseline to show what incidents were reported before or after that timeline. Docket 250 at 10. Brakeall argues that he has "been denied discovery and is unable to depose staff to prove his contention that the prison is understaffed; the defendants provided false statements in their affidavits to support their claims of proper staffing." Docket 250 at 12.

"The nonmoving party may not rest on mere allegations or denials, but must demonstrate on the record the existence of specific facts which create a genuine issue for trial." *Mosley*, 415 F.3d at 910 (internal quotation omitted). Because Brakeall has not alleged additional facts to show that there is a genuine issue of material fact that he was subjected to a denial of life's minimal necessities, defendants' motion for summary judgment is granted based on qualified immunity on Brakeall's prison condition claim against Baker, VanDeraa, Brown, and Rotert.

---

submitted by defendants alleges that the number of assaults with serious injury totaled 15 in 2014, 9 in 2015, and 15 in 2016. *See id.* at 1-2. Defendants further allege the total number of assaults without serious injury was 98 in 2014, 82 in 2015, and 84 in 2016. *Id.* And the fights without serious injury totaled 100 in 2014, 90 in 2015, and 92 in 2016. *Id.*

13

### b.   Failure to Protect

#### (1).   Failure to Exhaust Administrative Remedies

Defendants assert that Brakeall has not exhausted his administrative remedies regarding his failure to protect claims against Rotert, Baker, Brown, and VanDeraa. Docket 211 at 12. Defendants claim that Brakeall's Internal Resolution Request (IRR) did not "allege that he was being threatened or in danger. . . . [and that] [h]e does not name any staff member other than Meirose." *Id.* at 13. "Because he did not grieve his allegations against VanDeraa, Rotert, Brown or Baker he did not give the DOC an opportunity to resolve the issues through the administrative process." *Id.* at 13. The IRR Brakeall submitted only requested that criminal charges be filed against those who assaulted him, staffing levels be increased, and the parole detainees be housed in a separate unit. *Id.* at 13. Brakeall claims he submitted administrative remedy #13003 that "describ[ed] all three assaults and discuss[ed] the threats and theft endured throughout 2014 to 2016." Docket 250 at 13; *see* Docket 1-1 at 2.[7]

The Prison Litigation Reform Act (PLRA) provides that an inmate must exhaust all available administrative remedies before bringing an action with respect to prison conditions under either § 1983 or any other federal law. 42 U.S.C. § 1997e(a); *Booth v. Churner*, 532 U.S. 731, 741 (2001). This mandatory exhaustion requirement applies broadly to "all inmate suits about prison life,

---

[7] On February 4, 2016, a DOC employee "B. Knutson" received IRR 13003 that Brakeall is referencing.

whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002); *see also Jones v. Bock*, 549 U.S. 199, 211 (2007) ("There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in [federal] court."). The PLRA requires "immediate dismissal" of all unexhausted claims. *Gibson v. Weber*, 431 F.3d 339, 341 (8th Cir. 2005).

Before filing this action, Brakeall was required to fully and properly exhaust his administrative remedies as to each claim in the complaint. *See Johnson v. Jones*, 340 F.3d 624, 627 (8th Cir. 2003). In order to properly exhaust administrative remedies, Brakeall must comply with the prison's procedures. *Woodford v. Ngo*, 548 U.S. 81, 102 (2006) ("[P]roper exhaustion" under the PLRA requires prisoners to comply with the prison's deadlines and procedures.). "The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Jones*, 549 U.S. at 218.

This court has already held that Brakeall has exhausted his administrative remedies against prison officials even when he did not specifically name the defendants because the DOC policy and forms do not require the specific name of the individuals. Docket 196 at 21-25. Here, Brakeall's reprinted DOC informal and formal resolution forms did not state that he must request a remedy from a specific person. Because Brakeall

15

addresses the assaults and the remedies he was seeking after the assaults, the court finds that Brakeall has exhausted his administrative remedies for his claims against Rotert, VanDeraa, Baker, and Brown.

### (2).   Failure to Protect Legal Analysis

Brakeall alleges that defendants "failed to protect [him] while he was on parole and housed in maximum/high[-]medium prison general population and were deliberately indifferent to known threats and [his] status as a 'high-risk' parolee[.]" Docket 149 at 5. For the latter two assaults (February 1 and 2, 2016), Brakeall was a pretrial detainee. This part of his claim is analyzed under the Fourteenth Amendment. *Hartsfield v. Colburn*, 371 F.3d 454, 456-57 (8th Cir. 2004) (citing *Ervin v. Busby*, 992 F.2d 147, 150 (8th Cir. 1993) (finding that pretrial detainees' claims are evaluated under Due Process Clause rather than Eighth Amendment)).

Although the Eighth Circuit has not ruled on the amount of protection afforded to pretrial detainees under the Fourteenth Amendment Due Process clause, pretrial detainees like Brakeall have been afforded at least as much protection as under the Eighth Amendment. *Hartsfield*, 371 F.3d at 457. The Eighth Circuit has discussed the difference between the Eighth Amendment protection from cruel and unusual punishment and the Fourteenth Amendment protection from punishment prior to adjudication of guilt but has consistently applied the deliberate indifference standard "to pretrial detainee claims that prison officials unconstitutionally ignored a serious medical need or

16

failed to protect the detainee from a serious risk of harm." *Butler v. Fletcher*, 465 F.3d 340, 344 (8th Cir. 2006).

"Prison conditions may be 'restrictive and even harsh.' " *Farmer v. Brennan*, 511 U.S. 825, 833 (1994) (quoting *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981)). "Being violently assaulted in prison is simply not 'part of the penalty that criminal offenders pay for their offenses against society.' " *Id.* at 834 (quoting *Rhodes*, 452 U.S. at 347). That is not to say that every injury that is caused "at the hands of another" manifests into a constitutional violation. *Id.* "Because being subjected to violent assault is not 'part of the penalty that criminal offenders [must] pay for their offenses,' '[t]he Eighth Amendment imposes a duty on the part of prison officials to protect prisoners from violence at the hands of other prisoners.' " *Whitson v. Stone Cnty. Jail*, 602 F.3d 920, 923 (8th Cir. 2010) (quoting *Farmer*, 511 U.S. at 834 (first quoted material); *Perkins v. Grimes*, 161 F.3d 1127, 1129 (8th Cir. 1998) (second quoted material)).

A failure to protect claim is established when a plaintiff shows " 'that the prison official was deliberately indifferent to a 'substantial risk of serious harm.' " *Walls v. Tadman*, 762 F.3d 778, 782 (8th Cir. 2014) (quoting *Whitson*, 602 F.3d at 923) (internal quotations omitted). To show that there was a "substantial risk of serious harm," the plaintiff must show objectively that the inmate is incarcerated under conditions that pose "a substantial risk of serious harm." *Id.* (internal quotations omitted). Next, the plaintiff must show that the "prison official [subjectively] had a sufficiently culpable state of mind." *Id.*

17

(internal quotations omitted). "[T]he state of mind is one of deliberate indifference to inmate health or safety. An official is deliberately indifferent if he or she actually knows of a substantial risk and fails to respond reasonably." *Id.* (internal quotations omitted).

Deliberate indifference is more than negligence. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). In *Farmer*, the court describes deliberate indifference as when "the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837. "Nor may a prison official escape liability for deliberate indifference by showing that, while he was aware of an obvious, substantial risk to inmate safety, he did not know that the complainant was especially likely to be assaulted by the specific prisoner who eventually committed the assault." *Id.* at 843. "[I]n order to have a viable deliberate indifference claim, a plaintiff is not required to allege and prove that the defendant or defendants specifically knew about or anticipated the precise source of the harm[.]" *Krein v. Norris*, 309 F.3d 487, 491-92 (8th Cir. 2002) (emphasis omitted) (commenting on the Supreme Court's holding in *Farmer v. Brennan*). "[A] prison official may be held liable under the Eighth Amendment . . . only if he knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." *Farmer*, 511 U.S. at 848; *see also Prater v. Dahm*, 89 F.3d 538, 541 (8th Cir. 1996)

18

("[A]n inmate's] pleadings must demonstrate that the prison officials failed to act reasonably despite knowledge of a substantial risk of serious harm . . . .").

In *Blair v. Bowersox*, the Eighth Circuit explained that the hurdle of deliberate indifference is higher than a "should-have-known standard." 929 F.3d 981, 987 (8th Cir. 2019) (quoting *Letterman v. Does*, 789 F.3d 856, 861-62 (8th Cir. 2015)). The plaintiff must show that the defendant "had been exposed to information concerning the risk and thus must have known about it." *Id.* (internal quotations omitted). Next, the plaintiff must show that the defendant " 'deliberately disregarded the risk' " and the defendant knew his conduct was " 'inappropriate in light of the risk.' " *Id.* (quoting *Letterman*, 789 F.3d at 862). In *Blair*, the Eighth Circuit ruled that non-specific suspicion without evidentiary support is not enough to show that a prison official is deliberately indifferent. *Blair*, 929 F.3d at 988. A plaintiff's concerns about being released to the general population were vague because he said he feared that the friends of his enemies would try to attack him did not arise to deliberate indifference on the part of the defendants. *Davis v. Scott,* 94 F.3d 444, 445-47 (8th Cir. 1996).

Circumstantial evidence can be used to demonstrate that a prison official had knowledge of a substantial risk. *Whitson*, 602 F.3d at 925. The Eighth Circuit held that the plaintiff had shown there was a genuine dispute of material fact based on circumstantial evidence when the officers directed the female prisoner (plaintiff) to sit in the transport vehicle in the furthest caged compartment and a male inmate raped her. *Id.* at 924-25. The officers played

19

loud music and the other inmates were talking loudly. *Id.* The court held that

defendants must prove that "even if this risk appear[ed] obvious, the

defendants 'did not know of the underlying facts indicating a sufficiently

substantial danger and that they were therefore unaware of a danger, or that

they knew the underlying facts but believed (albeit unsoundly) that the risk to

which the facts gave rise was insubstantial or nonexistent.' " *Id.* at 926 (holding

that the district court erred when it relied on the argument that the assailant

did not have a history of sexual assaults, the defendants had no reason to

believe that the plaintiff would have been assaulted, and that the plaintiff failed

to notify defendants of the risk of harm).

Thus, for Brakeall's failure to protect claims against Baker, Rotert,

VanDeraa, and Brown to survive summary judgment he must show a genuine

dispute of material fact regarding: (1) that his incarceration in East Hall posed

a substantial risk of serious harm, and (2) that Baker, Rotert, Vanderaa, and

Brown knew of and disregarded that risk. *See Farmer*, 511 U.S. at 834.

Brakeall claims that defendants were aware that he had been assaulted in

2014 and again in 2016. *See* Docket 250 at 16-21. Specifically, Brakeall argues

that after the assault on February 1, 2016, he should have been placed into

protective custody by defendants and the assailants should have been

interviewed to determine whether further violence was expected. *Id.* at 17.

Brakeall was assaulted again the next day. Docket 40 ¶¶ 97, 100. He asserts

that "[f]ollowing the brutal assault of February 1, 2016, the defendants were

required by DOC policy to remove the plaintiff from the cell hall to protective

custody in order to investigate the matter. They all chose to refuse to do so."
Docket 250 at 20. Brakeall contends this action or failure to act violated his
Eighth Amendment right to be free from cruel and unusual punishment.[8]

After the February 1, 2016, assault in the card room, the assailants were
identified and placed in the SHU. Docket 216 ¶ 42. The next day, Brakeall was
assaulted by George Dominquez. Docket 40 ¶ 100. Although the assailants
were identified and placed in the SHU after the assault, that does not mean
that the alleged substantial risk of serious harm has ended. Like in *Whitson*,
Brakeall may raise a genuine issue of material fact through circumstantial
evidence that defendants had knowledge of a substantial risk (Brakeall argues
that this was gang affiliated) even after the assailants were apprehended, or
that the abatement measures that were taken were unreasonable, or that the
officials knew of a substantial risk and were deliberately indifferent.

### (a).   Lt. Kurtis Brown

Brakeall asserts that Brown failed to protect him. Docket 149 at 5.
Brakeall claims that he spoke to Brown "several times in the December 2015-
February 2016 time frame about being removed from East Hall because he was
repeatedly threatened by inmates he did not know, who he believed to be gang

---

[8] Defendants contend that an inmate has three options if they believe they are
in danger: (1) stay in current location; (2) refuse housing and go to segregated
housing (which is a rule violation and the inmate will be written up); or (3)
request protective custody. Docket 129 ¶ 40. Defendants also allege that the
SIU conducts an investigation "to determine whether the inmate is in danger."
*Id.* ¶ 42. Defendants' Operational Memorandum reads: "If staff become aware of
an inmate's need for protection, even though not requested, the same
procedures for requested Protective Custody apply." Docket 126-1 at 1.

affiliated." Docket 251 ¶ 74. Brown claims he does not remember Brakeall

giving him notice that he believed this was gang affiliated. Docket 216 ¶¶ 75,

76. Brown wrote the disciplinary report after he viewed the video of Brakeall

being assaulted on February 1, 2016. *Id.* ¶ 80. This was the extent of his

involvement in the matter. *Id.* Brakeall alleges that he reminded Brown of the

2014 assault and that after the February 1, 2016 assault, Brown saw him

"covered in his own blood and sent [Brakeall] directly back to his original cell

after returning from the trauma center," and that "[Brown] apparently

continued to believe there was no risk of gang violence." Docket 251 ¶ 76.

Brakeall claims that Brown "refus[ed] to remove the plaintiff from East hall

beforehand or after the vicious February 1, 2016 beating and [he failed] to

properly investigate or document the attack." Docket 251 ¶ 24. Brakeall claims

that Brown refused to provide him with protective custody. Docket 251 ¶ 24.

Here, Brakeall's allegations that he told Brown that he was being

threatened and that he believed that these threats were gang affiliated are

similar to the threats where the Eighth Circuit held that non-specific

suspicions without evidentiary support or vague fears that enemies would

attack him were not enough to rise to an official knowing of a substantial risk

of serious harm and failing to respond reasonably. *Blair*, 929 F.3d at 988;

*Davis,* 94 F.3d at 445. Brakeall has also not raised a genuine issue through

circumstantial evidence that Brown had knowledge of a substantial risk of

serious harm and that Brown did not respond reasonably. He merely claims

that he told Brown about threats that he believed were gang affiliated over a

22

span of two years. Docket 251 ¶ 74. Brown took reasonable action after the February 1st assault because he reviewed the video, identified the assailants, and took disciplinary action. Docket 216 ¶¶ 42, 79-80. Because the assailants were transferred to the disciplinary unit and placed in restrictive housing, Brown reasonably believed that Brakeall was no longer in danger. *Id.* Defendants argue that the assault on February 1, 2016, was not gang affiliated because the assailants were not members of gangs at the time of the assault and were later determined to be members of different gangs. Docket 216 ¶¶ 91-94. Brakeall has failed to allege a dispute of material fact to show that Brown was deliberately indifferent to a substantial risk of serious harm. Thus, Brown is entitled to qualified immunity and judgment as a matter of law on this issue.

### (b).   Major Chad Rotert

Brakeall asserts a failure to protect claim against Rotert. Docket 149 at 5. Brakeall claims that Rotert has seen him and heard about him multiple times and has "seen numerous kites concerning him." Docket 251 ¶ 37. Defendants contend that the extent of Rotert's involvement is that he supervises the Special Investigations Unit and that Rotert viewed and made a copy of the video of the February 1, 2016 assault on Brakeall. Docket 216 ¶¶ 36, 38, 40. According to defendants, Rotert was not assigned to conduct an investigation on the matter because the assailants were "immediately identified, and the assault did not appear to rise to the level of a felony assault, [so] there was no need for SIU to conduct an investigation." Docket 216 ¶ 41.

23

Brakeall claims that Rotert was responsible for investigating the February 1st assault and taking statements from him, the witnesses, and assailants. Docket 251 ¶ 40. He also alleges that Rotert failed to refer the crime to the DCI for investigation. *Id.*

Here, Brakeall's allegations against Rotert are vague. He asserts that Rotert has heard about him and seen him. *See* Docket 251 ¶ 37. Knowing who a particular inmate is and then simply knowing that the inmate has been assaulted by reviewing a videotape does not raise a genuine issue of material fact that Rotert knew of a substantial risk of serious harm to Brakeall or create circumstantial evidence to support such an assertion. Brakeall's allegations against Rotert are sparse and he has not articulated a genuine issue of material fact that he told Rotert about fear or threat but merely asserts that Rotert knows who he is. Docket 251 ¶ 37. Here, Brakeall's assertions are even less than those articulated by the plaintiffs in *Blair* and *Davis,* and in those cases the Eighth Circuit found that vague and non-specific threats did not arise to deliberate indifference. *See Blair*, 929 F.3d at 988; *Davis,* 94 F.3d at 445. Thus, Rotert is entitled to summary judgment as a matter of law and qualified immunity on this issue.

### (c).   Lieutenant Ryan VanDeraa

Brakeall argues that VanDeraa failed to protect him. Docket 149 at 5. Brakeall claims that VanDeraa took him to health services after the February 1, 2016, assault and that he told VanDeraa he wanted charges filed against the assailants. Docket 251 ¶ 84. Brakeall also alleges that "VanDeraa also failed to

24

follow the protective custody policy when it was objectively obvious that the plaintiff was at severe threat in the facility and he did not remove him from East Hall." Docket 251 ¶ 84. VanDerraa sent an email to other staff members after the assault and informed them that Brakeall had been assaulted that morning. Docket 216 ¶ 87. VanDeraa claims that his action of walking Brakeall to health services and sending an email was the extent of his involvement because the assailants had been identified. Docket 216 ¶ 87.

Brakeall claims that VanDeraa failed to follow the protective custody policy because it was objectively obvious that he was threatened after VanDeraa walked him to health services. Docket 25 ¶ 84. The timeline is unclear as to whether the assailants were already apprehended when VanDeraa walked Brakeall to health services, but even if they were not, VanDeraa's actions were reasonable to abate the alleged substantial risk as he escorted Brakeall to health services. *See Prater*, 89 F.3d at 541 ("The duty to protect requires only that prison officials 'take reasonable measures to abate substantial risks of serious harm of which the officials are aware.' ") (quoting *Reece v. Groose*, 60 F.3d 487, 491 (8th Cir. 1995)). Brakeall has not raised an issue of material fact that he continued to be under threat, other than by mere words, and that it was an objectively obvious severe threat. Thus, VanDeraa is entitled to qualified immunity and summary judgment as a matter of law on this issue.

25

### (d).   Major Steve Baker

In 2016, Baker was a Major and was responsible for the SIU. Docket 216 ¶ 69. Brakeall alleges that Baker was aware that he is a "passive, high-risk individual who was the subject of decades of harassment. Major Baker was responsible for training his staff in adherence to the law and DOC policy." Docket 251 ¶ 69. Baker claims that after he heard that Brakeall had been assaulted on February 1, 2016, he requested a copy of the surveillance video and did not believe the assault rose to the level of a felony thus needing further investigation and that it could be handled through the prison's disciplinary committee. Docket 216 ¶¶ 71, 72.

Derrick Bieber sent an email to Baker on February 8, 2016 that read "Br[akeall] [] seems to be the favorite target lately" and Baker responded and said "This sure don't tell us much." Docket 244-2. Brakeall claims that "Major Baker received a kite from a confidential informant regarding the plaintiff being a target, [and] Bieber refused to authorize loss-of-rec showers for the remaining weeks of the plaintiff's parole detainer and left the plaintiff in the same East Hall cell for fifteen days following the assaults." Docket 251 ¶ 42. He claims that "nothing was done to investigate the cause of the assaults to or determine the likelihood of further violence." Docket 251 ¶ 71.

Brakeall's allegations that Baker received a kite about Brakeall being a target and his assertions that Baker never investigated the February 1st assault to determine if there would be further violence does not raise a genuine issue of material fact that Baker knew of a substantial serious risk. Baker

26

reviewed the video and determined that because the assailants were identified it did not warrant further investigation. Docket 216 ¶¶ 71-72. A violation report was prepared and the assailants were sanctioned with a fine. *Id.* ¶ 42. Assailants also spent sixty days in the disciplinary unit and a separation order was issued between Brakeall and the assailants. *Id.* The alleged threat towards Brakeall was vague. Brakeall claims that Baker allegedly received a kite from a confidential informant about Brakeall being a target and Baker's email response of "this sure don't tell us much" strengthens the holding that the alleged threat was too vague without any other supporting evidence to put Baker on notice. Thus, Baker is entitled to qualified immunity and judgment as a matter of law on this issue.

### c.   Failure to Investigate

Brakeall claims that defendants alleged failure to investigate arises to a constitutional violation. *See* Docket 250 at 21. The Eighth Circuit has held that inadequate investigation is not sufficient to "state a civil rights claim unless there was another recognized constitutional right involved[.]" *Andrews v. Fowler*, 98 F.3d 1069, 1079 (8th Cir. 1996) (quoting *Gomez v. Whitney*, 757 F.2d 1005, 1006, n.1 (9th Cir. 1985)). Because Brakeall has not alleged a genuine issue of material fact that defendants violated the Eighth Amendment by failing to protect him, this court will only analyze whether Brakeall has raised a genuine issue of material fact that defendants' alleged actions amounted to a substantive due process violation under the Fourteenth Amendment.

A cause of action for reckless investigation to show a substantive due process violation was recognized in *Wilson v. Lawrence Cnty., Mo.*, 260 F.3d 946 (8th Cir. 2001). A state official's actions may violate the substantive due process liberty interest when the official's actions shock the conscience. *Wilson*, 260 F.3d at 956. Mere negligence and allegations of gross negligence for failure to investigate do not give rise to a constitutional violation. *Amrine v. Brooks*, 522 F.3d 823, 833 (8th Cir. 2008) (citing *Wilson*, 260 F.3d at 956)). "To establish a violation of this right by botched investigation, . . . [the plaintiff] must show that [defendants] intentionally or recklessly failed to investigate, thereby shocking the conscience." *Id.* at 834.

In *Wilson*, summary judgment based on qualified immunity was denied when a twenty-year-old with mental impairments was allegedly coerced by officers to confess to a murder—officers allegedly encouraged him when his answers were consistent with the murder and threatened him when he was inconsistent. *Wilson*, 260 F.3d at 950. In *Moran v. Clarke*, summary judgment was denied when the police officials used "questionable procedures, of pressures placed on officers to incriminate a specific person or corroborate the department's official line, of a hasty condemnation of [plaintiff] and of improper consideration of his race" and when the police "purposely ignored" exculpatory evidence. 296 F.3d 638, 648 (8th Cir. 2002).

In *Clemmons v. Armontrout*, a prisoner was stabbed to death and the plaintiff was identified as the perpetrator. 477 F.3d 962, 964 (8th Cir. 2007). Another inmate claimed to have seen a different inmate stab the victim but

officials chose not to investigate this lead because the witness was not out of his cell at the time of the occurrence. *Id.* at 964. The Eighth Circuit held that the official's action of not investigating or interviewing the "witness" was not intentional or reckless because a prison official had an eyewitness identification of the real perpetrator. *Id.* at 966-67. The court considered that the plaintiff did not produce evidence that defendants tried to suppress exculpatory facts or pressured individuals not to investigate other leads. *Id.* Thus, the court concluded that a reasonable juror could not find that defendants were reckless. *Id.*

Here, Brakeall claims that he demanded that the February 1st assailants be prosecuted for the assault and that defendants did not investigate the matter. Docket 250 at 21. Brakeall states: "There were no statements taken from the plaintiff or witnesses to determine the cause of the assault or the likelihood of further assault." *Id.* at 22. Brakeall claims that defendants relied on their initial impression that the assault was not worth prosecution. *Id.* Defendants allege that an investigation was not conducted because the assailants were "immediately identified, and the assault did not appear to rise to the level of a felony assault, there was no need for SIU to conduct an investigation." Docket 216 ¶ 41. Defendants contend that a violation report was prepared, the assailants were sanctioned with a fine and sentenced to serve sixty days in a disciplinary unit (where they remained until June 13, 2017), and there is a separation order between the assailants and Brakeall ("meaning

the inmates will no longer be housed at the same prison facility as Brakeall.") Docket 216 ¶ 42.

Defendants' actions do not show to that they "intentionally or recklessly failed to investigate, thereby shocking the conscience." *Amrine*, 522 F.3d at 834. Like in *Clemmons*, Brakeall has not submitted evidence that defendants tried to suppress exculpatory facts or pressured individuals not to investigate other leads. *Clemmons*, 477 F.3d at 966-67. Brakeall's allegations seem more aligned to show a mere disagreement on how the aftermath of his assault was handled. Disagreement on how things are handled is not the same as engaging in coercive interrogation techniques or purposely ignoring exculpatory evidence. Brakeall has not alleged a dispute of material fact that defendants intentionally or recklessly failed to investigate. Thus, defendants are entitled to qualified immunity and judgment as a matter of law on the issue.

Thus, it is ORDERED:

1. That Brakeall's motion for reconsideration (Docket 265) is denied.

2. That Defendants' Third Motion for Summary Judgment (Docket 210) is granted.

Dated August 27, 2020.

BY THE COURT:

/s/ *Karen E. Schreier*
KAREN E. SCHREIER
UNITED STATES DISTRICT JUDGE